## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                        :
                                              :        **Chapter 7**
**MICHELIN ALCIDE,**                          :
                                              :
            **Debtor.**                       :        **Bky. No.  10-15489 ELF**
                                              :

# M E M O R A N D U M

# I.  INTRODUCTION

The Debtor commenced this bankruptcy case by filing a petition under chapter 13 of the

Bankruptcy Code on July 2, 2010.  On October 4, 2010, Everhome Mortgage Company

("Everhome"), as Servicer for Everbank ("Everbank"), filed a motion for relief from the

automatic stay ("the Motion") (Doc. # 25), seeking permission to resume foreclosure proceedings

against the Debtor's residence, 1618 E. Washington Lane, Philadelphia, PA 19138 ("the

Property").

Everhome asserts that it is entitled to relief under both 11 U.S.C. §362(d)(1) and (d)(2).[1]

In the Motion, Everhome alleged facts typically set forth in motions of this type filed in chapter

13 cases:

- it services a mortgage against the Property;

- the Debtor failed to pay post-petition monthly mortgage payments from
  August 2010 through November 2010;

---

[1]    11 U.S.C. §362(d)(1) provides for relief from the automatic stay "for cause, including the lack of adequate protection." Section 362(d)(2) provides relief from the automatic stay as to an act against property if the debtor does not have any equity in the property and the property is not necessary to an effective reorganization.

- the Debtor lacks equity in the Property; and

- the Property is not necessary to an effective reorganization.

In his response to the Motion filed on October 20, 2010 (Doc. # 32), the Debtor did not

deny unequivocally Everhome's allegation that he has not made any post-petition monthly

instalment payments to Everhome.[2]  Rather, he denied only that he has any obligation to do so,

giving two reasons for this denial:

> (1) he disputes that either Everbank or Everhome holds a mortgage on the
> Property (Debtor's Answer to Motion ¶4) (Doc. # 32); and,

> (2) he asserts that under the terms of his proposed chapter 13 plan, he is not
> obliged to make post-petition monthly instalment payments (Debtor's Answer
> to Motion  ¶5).[3]

After three continuances by agreement of the parties, (see Docket Entry Nos. 33, 37, 55),

a hearing on the Motion was held and concluded on March 17, 2011.  The primary focus of the

hearing was the Debtor's contention that Everhome lacks standing to prosecute the Motion.

At the hearing, only one witness testified: George M. Ricketson, an individual employed

by Everhome as a Senior Default Coordinator. He testified on Everhome's behalf.  Six exhibits

were admitted into evidence.

At the conclusion of the hearing, the parties' counsel requested the opportunity to file

both initial memoranda of law in support of their respective positions and then reply memoranda.

---

[2]    At the hearing on the Motion, the Debtor conceded that he has not made post-petition
monthly instalment payments to Everhome or Everbank.

[3]    As a final fallback argument in defense of the Motion, the Debtor also alleged that the
holder of the secured claim (whomever that might be) is adequately protected by FHA insurance that
"guarantees the holder of the mortgage . . .  payment of not less than its legitimate claim."  (Debtor's
Answer ¶6(a)).

Consequently, I entered an order setting up a briefing schedule, with simultaneous memoranda due on March 31, 2011 and reply memoranda due one week later.  (Doc. # 60).

This contested matter remains ready for decision.[4]

Before proceeding further, however, it is necessary to mention a significant procedural development in the bankruptcy case that occurred just recently.  On May 23, 2011, the Debtor filed a Notice of Conversion, converting this case from chapter 13 to chapter 7.  (Doc. # 70).  See Fed. R. Bankr. P. 1017(f)(3).  Nevertheless, I will proceed to decide the Motion because the Debtor's lead argument  –  that Everhome is not a party that may seek relief from the automatic stay  – remains available to the Debtor even after the conversion of the case and is dispositive.

For the reasons set forth below, the Motion will be denied without prejudice.[5]

## II.  FACTUAL BACKGROUND

### A.

In order to place the present dispute in the proper procedural perspective, it is helpful to summarize certain background information regarding this chapter 13 case.

---

[4]    Everhome's counsel filed a memorandum of law on March 31, 2011.  (Doc. # 64).
Despite his earlier request for an opportunity to file a memorandum of law and a reply memorandum, the Debtor's counsel did not timely file a memorandum on that date.  (Doc. # 65).  Instead, without any explanation or request for an extension of time, on April 14, 2011, he filed a memorandum in opposition to the Motion.  By order dated April 22, 2011, I struck the untimely memorandum and stated that it "will not be considered by the court in deciding the Motion."  (Doc. # 68).  In light of this development, no reply memoranda were filed.

[5]    Because I deny the Motion based on the Debtor's argument that Everhome did not establish its status as a party in interest, I need not consider whether the newly appointed chapter 7 trustee should be given an opportunity to be heard and to defend the Motion.

On July 27, 2010, less than four weeks after the commencement of the case, Everhome, as Servicer for Everbank, filed a proof of claim (Claim No. 3) ("the Proof of Claim"). The Proof of Claim is in the amount of $103,973.26 and states that the claim is secured by the Property. The Proof of Claim also states that instalment payments on the loan are delinquent from March 1, 2005 at $677.07 per month and that the total pre-petition delinquency on the loan is $63,703.80.[6]

The Debtor filed his bankruptcy schedules on August 3, 2010 and a chapter 13 plan on August 4, 2010. (Doc. #'s 15, 16).

In his bankruptcy schedules ("the Schedules"), the Debtor disclosed a one-half ownership interest in the Property. (Doc. # 15, Schedule A).[7] He disclosed the current value of his one-half interest in the Property as $50,000.00. I infer from the Debtor's disclosure that he calculated the value of his interest in the property by dividing in half the value of the entire Property (i.e., $100,000.00 divided by two).

In his bankruptcy schedules, the Debtor also disclosed that the Property is encumbered by a mortgage in the amount of $103,973.26. In Schedule D, the Debtor identified three creditors as mortgage holders:

---

[6]    Attached to the Proof of Claim were copies of the mortgage, note and certain assignments. Later, the mortgage and assignments were separately marked and admitted into evidence at the March 17, 2011 hearing on the Motion. I will refer to the exhibits in Part III.B, infra.

[7]    I may take judicial notice of the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa., Aug. 26, 1998); see also In re Indian Palm Associates, Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

    (1)   MERS, Inc. as Nominee for Everhome Mortgage Co.;[8]

    (2)   Michael J. Clark, Esquire; and

    (3)   Everhome Mortgage Co., Inc.

(Doc. # 15, Schedule D).

In Schedule D, the Debtor also disclosed that the Property was encumbered by three municipal liens (two in favor of "Philadelphia Gas Works" and one in favor of "Water Revenue") in the aggregate amount of $12,364.30.

The Debtor filed a chapter 13 plan ("the Plan") on August 4, 2010.  (Doc. # 16).  In substance, the Plan proposed for the Debtor to pay $5.00 per month for 60 months ($300.00 total) to the Chapter 13 Trustee.  In addition, the Plan provided for the Debtor to sell the Property and distribute the proceeds in full satisfaction of the allowed secured claim of the holder of the note and mortgage on the Property and the other claims secured by the Property, with any remaining sale proceeds to be turned over to the Trustee.

The Plan made no reference to value the of the Property or the fact that the total amount due on the secured claims, as disclosed on his Schedules, exceeds the value of the Property.  The Plan did not explain how the Debtor would be able to consummate the proposed sale or how any net proceeds would be available to the Trustee from the sale of a $100,000 asset encumbered by more than $116,000.00 in liens.  The Plan set no deadline for the sale of the Property.  But see In re Erickson, 176 B.R. 753, 757 (Bankr. E.D. Pa. 1995) (suggesting that a chapter 13 plan that features the sale of the debtor's property must state the terms and time of the contemplated sale).

---

[8]    Undoubtedly, the Debtor was referring to the entity named Mortgage Electronic Registration, Inc. ("MERS").

# B.

I find the following facts based on the testimony presented and the documents introduced into evidence at the March 17, 2011 hearing.

## Everhome and Everbank

1. Everhome and Everbank are separate entities.

2. Everbank is the parent company of Everhome.

3. Everhome "services" mortgages held by Everbank, by accepting payments from borrowers and tracking those payments and any defaults that arise under the mortgage.

## the Mortgage

4. On November 18, 1998, the Debtor entered into a mortgage loan transaction ("the Original Transaction") with Home Mortgage, Inc. ("HMI").

5. The mortgage loan transaction was guaranteed by the Federal Housing Administration.

6. In the Original Transaction, the Debtor signed a note ("the Note") and a mortgage ("the Mortgage") against the Property in favor of HMI.  (See Ex. M-2).

7. The Mortgage states that it secures repayment of a debt evidenced by the Note.  (Id.).

8. On June 30, 2000, HMI, acting through its Vice President, Teresa N. Jones, executed a written assignment, assigning the Mortgage to PrimeWest Mortgage Corporation ("PrimeWest").

9. The HMI - PrimeWest assignment was recorded in the Philadelphia Department of Records on July 28, 2000.  (Ex. M-4).

10. On June 1, 2005, PrimeWest, acting through its Vice President, Tanya Ault, executed a written assignment, assigning the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), "as nominee for Everhome Mortgage Company."  (Ex. M-5).

11. The PrimeWest - MERS/Everhome assignment was recorded in the Philadelphia Department of Records on October 25, 2005.  (Ex. M-5).

12. On March 8, 2011, MERS, again as "as nominee for Everhome Mortgage Company," and acting through Ann Johnson, Assistant Secretary, and Marcie Metcalf, Vice President, executed a written assignment, assigning the Mortgage to Everbank.  (Ex. M-7).

13. The March 8, 2011 MERS - Everbank mortgage assignment was unrecorded as of March 17, 2011, the date of the hearing in this contested matter.


### the Note

14. Attached to the Note is a blank endorsement executed by an individual purportedly acting on behalf of PrimeWest.

15. Everhome does not have physical possession of the Note.

16. U.S. Bank has physical possession of the Note.

17. Everhome considers U.S. Bank to be acting as Everhome's "custodian" in maintaining physical possession of the Note.[9]

---

[9]     The Note itself was not admitted into evidence.  Mr. Ricketson testified, without objection, to the facts set forth in Finding of Fact Nos. 14-17.

18. The record does not reflect when U.S. Bank came into possession of the Note.[10]


**the foreclosure Complaint**

19. On September 14, 2005, MERS, acting in its own name (and without the qualifying

reference "as nominee") filed a complaint in mortgage foreclosure ("the Complaint") against

the Debtor in the Court of Common Pleas, Philadelphia County, Pennsylvania, docketed at

No. 1150, Sept. Term 2005.  (Ex. D-1).

20. In the Complaint, MERS alleged, without any qualification, that it is "the original

Mortgagee named in the Mortgage, the legal successor in interest to the original Mortgagee,

or is the present holder of the mortgage by . . .  Assignment(s)."  (Ex. D-1, Complaint ¶2).[11]

21. As of July 2, 2010, MERS' motion for summary judgment, which the Debtor contested, was

pending.


**the bankruptcy case**

22. The Debtor commenced this chapter 13 bankruptcy case on July 2, 2010.

23. On July 27, 2010, Everhome, acting "as servicer for Everbank," filed a proof of claim,

asserting a claim secured by the Property in the amount of $103,973.26, with pre-petition

---

[10]     Perhaps the transfer of possession occurred in June or July 2005, when PrimeWest assigned the Mortgage to MERS as nominee for Everhome.  However, I make no finding on this point.

[11]     The state court docket reflects that on March 16, 2007, MERS filed a praecipe "to substitute Plaintiff as Mortgage Electronic Registration Systems Inc. as nominee for Everhome Mortgage Company."  See generally In re Soto, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998) (a bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction).

arrears of $63,703.80.

24. On October 4, 2010, Everhome, again acting "as servicer for Everbank," initiated this

contested matter by filing the Motion, alleging that it is the "holder of a secured claim"

against Debtor, secured by a first mortgage on the Property.

25. The Motion requests that the court grant Everhome relief from the automatic stay "to

foreclose upon and to otherwise exercise its rights with respect to the [Property]."

26. Since the commencement of this bankruptcy case, the Debtor has made no payments to

Everhome or Everbank.


# III. DISCUSSION

## A. Introduction

The transformation of the home mortgage finance industry in the past 25 years, through

the treatment of the stream of revenue generated by residential mortgage loans as a commodity to

be sold freely in the marketplace, the rise of residential mortgage securitization[12] and the

---

[12]     In In re Weisband, 427 B.R. 13, 21 (Bankr. D. Ariz. 2010), the court, quoting liberally
from a law review article, concisely summarized the residential mortgage securitization process:

> Securitization of residential mortgages is "the process of aggregating a
> large number of notes secured by deeds of trust in what is called a mortgage
> pool, and then selling security interests in that pool of mortgages." Kurt Eggert,
> Held Up In Due Course: Predatory Lending, Securitization, and the Holder in
> Due Course Doctrine, 35 Creighton L. Rev. 503, 536 (2002). The process begins
> with a borrower negotiating with a mortgage broker for the terms of the loan.
> Then, the mortgage broker either originates the loan in its own name or in the
> name of another entity, which presumably provides the money for the loan.
> Almost immediately, the broker transfers the loan to the funding entity. "This
> lender quickly sells the loan to a different financial entity, which pools the loan
> together with a host of other loans in a mortgage pool." Id. at 538.

(continued...)

accompanying torrent of mortgage assignments, has generated a host of legal issues in the state

and federal courts.  In recent years, as (purported) assignees and subsequent assignees of original

mortgage lenders have sought access to the courts to remedy asserted loan repayment defaults,

the defending borrowers increasingly have questioned whether the entity seeking judicial relief is

the party actually entitled to enforce the mortgage loan obligation.  Frequently, the issue is

framed as whether the creditor movant or plaintiff has "standing" or otherwise is a proper party

before the court.

The propriety of a creditor's status as a party has arisen regularly in the bankruptcy

courts, most commonly raised by debtors in defense of a motions for relief from the automatic

stay or in objections to  proofs of claim.  Review of the reported decisions reveals that the

litigation regarding the creditor's status as a proper party has given rise to a plethora of subsidiary

issues.  Depending upon the details of the loan assignment history, the level of evidentiary detail

presented by creditor and the nature of the contested matter before the bankruptcy court, the

subsidiary issues that arise include:

---

[12](...continued)

The assignee then transfers the mortgages in the pool to another entity, which in turn transfers the loans to a special purpose vehicle ("SPV",) whose sole role is to hold the pool of mortgages. Id. at 539. "The transfer to the special purpose trust must constitute a true sale, so that the party transferring the assets reduces its potential liability on the loans and exchanges the fairly illiquid loans for much more liquid cash." Id. at 542. Next, the SPV issues securities which the assignee sells to investors. Id. at 539.

Once the securities have been sold, the SPV is not actively involved. It "does not directly collect payments from the homeowners whose notes and deeds of trust are held by the SPV." Id. at 544. Rather, servicers collect the principal and interest payments on behalf of the SPV. Id. Fees are associated with the servicing of loans in the pool.

- Is a creditor's status as a proper party determined not only by principles of constitutional "standing," but also by application of doctrines of "prudential standing," such as the "real party in interest" rule set forth in Fed. R. Bankr. P. 7017 and Fed. R. Civ. P. 17?[13]

- May a loan "servicer" assert claims against the debtor on behalf of the mortgage holder and, if so, what evidence is necessary to establish its authority to proceed in court on behalf of the mortgage holder?[14]

- If a mortgage holder's chain of title with respect to the mortgage and/or note includes an assignment to or from MERS, what rights were assigned to MERS "as nominee" and did MERS have the requisite legal authority when it subsequently assigned the notes and/or mortgages to third parties?[15]

- To what extent, if any, is the creditor's right to relief dependent upon a demonstration of its status as the "holder" of the note or the "non-holder of the note with the right to enforce the note" consistent with Article 3 of the applicable state law version of the Uniform Commercial Code?  Or, is it sufficient for the creditor to establish its status as mortgage holder in order to be a proper party before the court?[16]

---

[13]     See In re Hwang, 396 B.R. 757 , 767 (Bankr. C.D. Cal. 2008) ("Hwang I") (while servicer may be a "party in interest," it is not the "real party in interest" as required by Fed. R. Bankr. P. 7017, 9014, and therefore, a mortgage loan servicer may not prosecute a motion for relief from the automatic stay in its own name), rev'd on other grounds, 438 B.R. 661 (C.D. Cal. 2010); accord In re Wilhelm, 407 B.R. 392, 398 (Bankr. D. Idaho 2009); In re Jacobson, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); In re Woodberry, 383 B.R. 373, 378-79 (Bankr. D.S.C. 2008).

[14]     See In re Lopez, 446 B.R. 12 (Bankr. D. Mass. 2011); In re Densmore, 445 B.R. 307, 311 (Bankr. D. Vt. 2011); In re Minbatiwalla, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010); Jacobson, 402 B.R. at 367; In re Hayes, 393 B.R. 259, 267 (Bankr. D. Mass. 2008); In re Conde DeDonato, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008); Woodberry, 383 B.R. at 379; In re Maisal, 378 B.R. 19, 22 (Bankr. D. Mass. 2007); In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005).

[15]     See In re Martinez, 2011 WL 996705, at *5-6 (Bankr. D. Wyo. Mar. 16, 2011); Lopez, 446 B.R. at 12; In re Martinez, 444 B.R. 192, 203-05 (Bankr. D. Kan. 2011) ("Martinez I"); In re Agard, 444 B.R. 231, 247-53 (Bankr. E.D.N.Y. 2011); In re Tucker, 441 B.R. 638, 644-45 (Bankr. W.D. Mo. 2010); Wilhelm, 407 B.R. at 404.

[16]     See In re Martinez, 2011 WL 1519877, at *4-5 (Bankr. D. Kan. Apr. 20, 2011); Martinez, 2011 WL 996705, at *4; Densmore, 445 B.R. at 312; Agard, 444 B.R. at 245-46; Marks v.

(continued...)

- To what extent if any, does the limited scope of a hearing on a motion for relief from the automatic stay affect the court's analysis of any of the issues stated above?[17]

In this case, a loan servicer (Everhome), purportedly acting on behalf of its principal (Everbank), has requested relief from the automatic stay to proceed in state court to enforce the Mortgage on the Property.  The Debtor asserts that Everhome has not established that it has the legal authority to enforce the Mortgage and therefore, it lacks standing, or it is not a "party in interest" or it is not the "real party in interest."

I can resolve this dispute without reaching many of the issues described above. Notwithstanding 11 U.S.C. §362(g), Everhome, as the moving party, bears the burden of proving that it is a party in interest under 11 U.S.C. §362(d).  See Wilhelm, 407 B.R. at 400-01; see also Tarantola, 2010 WL 3022038, at *6; Jacobson, 402 B.R. at 367.  The present record is insufficient to support a finding that Everhome is either the holder of the Mortgage or the agent of the mortgage holder, with authority to enforce the Mortgage in judicial proceedings. Therefore, Everhome has not met its burden of establishing its status as a party in interest that may seek relief from the automatic stay under 11 U.S.C. §362(d).

---

[16](...continued)
Braunstein, 439 B.R. 248, 250-51 (D. Mass. 2010); In re Kemp, 440 B.R. 624, 630-32 (Bankr. D.N.J. 2010); In re Tarantola, 2010 WL 3022038, at *3-5 (Bankr. D. Ariz. July 29, 2010); In re Mims, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010); In re Weisband, 427 B.R. at 18-19; Jacobson, 402 B.R. at 367; Wilhelm, 407 B.R. at 398; Hwang I, 396 B.R. at 762-66; In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007).

[17]       See In re Ebersole, 440 B.R. 690, 694 (Bankr. W.D. Va. 2010) (movant seeking relief from the automatic stay need only have a "colorable claim" to establish its standing to bring the motion); accord Tarantola, 2010 WL 3022038, at *3; Weisband, 427 B.R. at 17-18; In re Emrich, 2009 WL 3816174, at *1 (Bankr. N.D. Cal. Nov. 12, 2009); Maisal, 378 B.R. at 21.

### B.  Applicable Legal Principles

### 1.

When a debtor challenges a creditor's status as a proper party to seek relief from the automatic stay, courts have analyzed the controversy by reference to the concepts of constitutional standing, prudential standing, "real party in interest" (within the meaning of Fed. R. Civ. P. 17)[18] and the bankruptcy concept of "party in interest."  The bankruptcy term "party in interest" is particularly relevant because §362(d) of the Bankruptcy Code specifically states that "[o]n request of a <u>party in interest</u> and after notice and a hearing, the court shall grant relief from the stay," if certain facts are established.  11 U.S.C. §362(d) (emphasis added).

Based on the recent decision of our Court of Appeals, <u>In re Global Industrial Technologies, Inc.</u>, 2011 WL 1662792 (3d Cir. May 4, 2011) (en banc) ("<u>GIT</u>"), I find it unnecessary to engage in an extended discussion regarding the elements of and interrelationship among the legal concepts of constitutional standing, prudential standing, "real party in interest" and "party in interest."

<u>GIT</u> involved a challenge to the standing of a party to object to confirmation of a chapter 11 plan.  In overruling certain objections to confirmation of the plan, the bankruptcy court held that the objectors lacked standing to object.  That decision was affirmed by the district court. The Court of Appeals reversed.

Most significantly for present purposes, the <u>GIT</u> court stated:

> The District Court described the Bankruptcy Code's "party in interest" standard as "more exacting" than the constitutional injury-in-fact requirement

---

[18]     Fed. R. Civ. P. 17 is applicable in contested matters through Fed. R. Bankr. P. 9014 and in adversary proceedings through Fed. R. Bankr. P. 7017.

> .  .  . but we think that is a misunderstanding of the Code. <u>Persuasive
> authority indicates that Article III standing and standing under the Bankruptcy
> Code are effectively coextensive.</u>

2011 WL 1662792, at *6 (emphasis added).

The logical import of the Court of Appeals' statement is that a party that has

constitutional standing is a party in interest under the Bankruptcy Code and, as such, is expressly

authorized by 11 U.S.C. §362(d) to prosecute a motion for relief from the automatic stay.

In <u>GIT</u>, the court summarized the requirements for constitutional standing as follows:

> A party seeking constitutional standing must demonstrate an "injury in fact" that
> is "concrete", "distinct and palpable", and "actual or imminent." Additionally, the
> party must establish that the injury "fairly can be traced to the challenged action
> and is likely to be redressed by a favorable decision."
>
> .  .  .
>
> Standing in bankruptcy cases is also governed by the terms of 11 U.S.C. § 1109(b)
> . . . . The United States Court of Appeals for the Seventh Circuit has described a
> party in interest as "anyone who has a legally protected interest that could be
> affected by a bankruptcy proceeding." That "party in interest" test comports with
> our own definition of a "party in interest" as one who "has a sufficient stake in the
> proceeding so as to require representation."

2011 WL 1662792, at *5 (citations omitted).

I read <u>GIT</u> to instruct that a party in interest in a bankruptcy case must have some legally

protected interest that either has been adversely affected (thereby warranting judicial relief) or

that is in actual danger of being adversely affected (if relief is not granted). <u>Accord</u> 3 <u>Collier on

Bankruptcy</u> ¶362.07[2], at 362-105 (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2010)

("any party affected by the stay should be entitled to move for relief").

Further, inherent in the requirement that a party in interest must have some "legally

protected" interest is the additional requirement that the party must be asserting its own rights

-14-

and not that of another entity.  See, e.g., Martinez, 2011 WL 996705, at *4; Hayes, 393 B.R. at

267; In re Woodbury, 383 B.R. at 379; see also Storino v. Borough of Point Pleasant Beach, 322

F.3d 293, 298-99 (3d Cir. 2003).[19]


## 2.

In the context of a motion for relief from the automatic stay to enforce a creditor's rights

under a mortgage, courts have recognized that to have the "legally protected interest" that makes

a party a "party in interest," the movant must be the party that has authority to enforce the

mortgage under applicable nonbankruptcy law.  E.g., Agard, 444 B.R. at 245.  (Otherwise, the

movant would be seeking relief to enforce the rights of a third party not before the court).

Therefore, consideration of nonbankruptcy law is necessary in assessing whether Everhome, the

movant here, is a party in interest.  See, e.g., Densmore.,445 B.R. at 310; Martinez, 2011 WL

996705, at *4.

Under Pennsylvania law, a mortgage foreclosure action may be maintained by the original

holder of the mortgage or a subsequent assignee.  See 22 Standard Pennsylvania Practice 2d

§121:39 (2010) ("SPP 2d"); 8 Pennsylvania Law Encyclopedia, Commercial Transactions §207

(2d ed. 2009).  In a foreclosure complaint, the plaintiff must allege its status as the holder of the

mortgage and, if the plaintiff is an assignee, it must allege that it is the holder by assignment.  See

Wells Fargo Bank, N.A. v. Lupori, 8 A.3d 919, 921-22 (Pa. Super. Ct. 2010).  However, it is not

---

[19]        There is a limited exception to this general rule.  See, e.g., Powers v. Ohio, 499 U.S. 400,
410-411(1991); Interactive Media Entertainment and Gaming Ass'n Inc. v. Attorney General of U.S., 580
F.3d 113, 117-18 (3d Cir. 2009).  The exception is inapposite in this case.

necessary that the assignment be recorded prior to filing the complaint.  U.S. Bank, N.A. v. Mallory, 982 A.2d 986, 993 (Pa. Super. Ct. 2009).

### C.  Everhome Has Not Established that It Is A Party In Interest

On the present record, Everhome has not established that it is a party in interest entitled to seek relief from the automatic stay under 11 U.S.C. §362(d) in order to prosecute a foreclosure action against the Property.  Everhome has not presented sufficient evidence to permit a finding that it is either: (1) the holder of the mortgage, with the concomitant right to enforce it under Pennsylania law or (2) an agent authorized by the holder of the Mortgage to initiate court proceedings to enforce the Mortgage on the holder's behalf.

### 1.

When it filed the Motion, Everhome had a record interest in the Mortgage in the form of the 2005 mortgage assignment from PrimeWest to MERS "as nominee for Everhome."[20]  As stated above, Pennsylvania law unequivocally provides that a mortgage holder may enforce the mortgage in a judicial foreclosure proceeding.  See Part III.B.2., supra. Thus, at first blush, Everhome would have appeared to be a party in interest when it filed the Motion. However, other

---

[20]      The meaning of the phrase "MERS as nominee for [entity]" is not entirely clear.  There are a number of reported decisions that have considered its meaning based on a robust evidentiary record.  See Martinez I, 444 B.R. at 205-06; Agard, 444 B.R. at 246-53; Tucker, 441 B.R. at 644-46.  The analyses of those courts suggest that MERS did not take a beneficial interest in a mortgage through its status as Everhome 's "nominee," but rather, Everhome was the record mortgagee.  In this case, however, there is nothing in the record that explicates the substantive content of the  MERS-Everhome relationship created by the mortgage assignment from PrimeWest in 2005.  Because I decide this matter on other grounds, I do not reach this question and I make no factual findings and draw no legal conclusions on the subject.

evidence presented conclusively contradicted Everhome's apparent status as the mortgage holder.

Most significantly, during the hearing, Everhome made no claim that it is the mortgage holder.  All of the evidence it presented, through Mr. Ricketson's testimony, was designed to prove that Everhome is servicing the Mortgage on behalf of its parent company, Everbank. Everhome made no effort to harmonize this position with the inconsistent language in the 2005 mortgage assignment from PrimeWest to MERS - Everhome.  Everhome's own position in the litigation, by itself, makes it impossible to accord it "party in interest" status as the holder of the Mortgage.

Further, by the time the hearing was held in this contested matter, another mortgage assignment had been executed, which on its face removed Everhome as the beneficial mortgagee. Although the March 2011 assignment from MERS to Everbank was not recorded, under Pennsylvania law, the allegation that a party is the owner of a mortgage that is not yet recorded is sufficient to permit that party to proceed as a plaintiff in an action in mortgage foreclosure. Mallory, 982 A.2d at 993.  Thus, Everhome's own evidence tended to prove that Everbank, not Everhome, is the party in interest with the right to enforce the Mortgage under applicable nonbankruptcy law.[21]

Everbank has not made a preliminary showing that it is a holder of the Mortgage with a

---

[21]     An unstated premise of this part of my analysis is that MERS had the authority to execute a mortgage assignment to Everbank on behalf of Everhome and that the MERS - Everbank assignment was valid.  Everhome assumes as much.  The Debtor, however, questioned this premise.  I do not decide whether the MERS - Everbank assignment was effective.  I note only that there is division in the case law on the issue.  Compare Martinez, 444 B.R. at 205-06 (MERS as nominee has authority to execute mortgage assignments and note assignments), and Tucker, 441 B.R. at 644-46 (same), with Agard, 444 B.R. at 246-53 (MERS lacks such authority), and Wilhelm, 407 B.R. at 400 (same).

right of enforcement.  Therefore,  Everhome may be a party in interest only if the evidence shows

that Everhome has been authorized by the party that has the right to enforce the Mortgage to

initiate legal proceedings on its behalf.

## 2.

Everhome's position is that the Mortgage is held by Everbank and that as the servicer of

the Mortgage, it has authority to file a motion for relief from the automatic stay.  The Debtor

does not concede this.

A number of courts have upheld the authority of a mortgage loan servicer to file a proof

of claim on behalf of the mortgage holder.[22]  Most of the reported decisions also hold that a

mortgage loan servicer has standing and is a party in interest entitled to prosecute a motion for

relief from the automatic stay.[23]

After reviewing the relevant case law, I conclude that a servicer's financial interest in the

---

[22]    See Densmore, 445 B.R. at 311; Minbatiwalla, 424 B.R. at 109; see also Greer v. O'Dell,
305 F.3d 1297, 1302-03 (11th Cir. 2002) (servicer of unsecured credit card debt is party in interest that
may file proof of claim for the creditor).  In the proof of claim context, the authority of a servicer to file
a proof of claim is expressly authorized by the rules of court.  See Fed. R. Bankr. P. 3001(b) (authorizing a
proof of claim to be filed by the creditor's "authorized agent").

[23]    See Lopez, 446 B.R. at 12; Jacobson, 402 B.R. at 367; Conde DeDonato, 391 B.R. at
250; Woodbury, 383 B.R. at 379; see also Weisband, 427 B.R. at 21 (stating that mortgage servicer
would have had standing due to the concrete injury it would suffer if unable to collect its servicing fees,
but finding that the servicer lacked standing because it did not establish that its principal held the note
and deed of trust); Hayes, 393 B.R. at 267 (stating that mortgage servicers are parties in interest, but
finding that the servicer lacked standing to prosecute a motion for relief from the automatic stay because
it did not establish that its principal was the mortgage holder).  But see Hwang I, 396 B.R. at 767 (while
servicer may be a "party in interest," it is not the "real party in interest" as required by Fed. R. Bankr. P.
7017, 9014, and therefore, a mortgage loan servicer may not prosecute a motion for relief from the
automatic stay in its own name).

debtor's unpaid stream of mortgage payments satisfies the initial, and most fundamental, requirement for "party in interest" status ("injury in fact"), but does not automatically meet the prudential requirement that the movant assert its own legal rights, not that of a third party.

Most commonly, as in this case, a motion for relief from the automatic stay requests that the bankruptcy court authorize the movant to initiate or resume a foreclosure against the secured property. The purpose of the foreclosure action is to subject the secured property to sale, thereby permitting the secured creditor to realize its collateral. In Pennsylvania, it is the mortgage holder that has the right to pursue an action in mortgage foreclosure. Therefore, even though the servicer has an economic interest in the revenue stream generated by the mortgage, the relief requested in a stay relief motion – the right to pursue foreclosure proceedings against the collateral – involves the enforcement of the rights of the mortgage holder, not the servicer. Thus, the servicer's economic stake in the mortgage does not necessarily mean that the servicer is a party in interest that may seek relief from the automatic stay in order to proceed with foreclosure.

That said, even though the in rem rights to be enforced following the grant of relief from the automatic stay may be those of the mortgage holder and not the servicer, the servicer may nonetheless be a party in interest in the bankruptcy case, with the right to prosecute a stay relief motion, if the servicer is acting within the scope of its authority as the mortgage holder's agent. Whether it has such authority depends on the content of the servicing agreement between the mortgage holder and the servicer. That agreement may or may not be broad enough in scope as to delegate to the servicer the authority to initiate and manage foreclosure litigation on the

mortgage holder's behalf.[24]

A servicer can establish its authority to initiate the legal action if it demonstrates that its

contractual duties to the mortgage holder include not just the collection of payments, but also the

conduct of mortgage foreclosure and other legal proceedings on the holder's behalf.  Such

authority includes the power to move for relief from the automatic stay in the bankruptcy court.

See Martinez, 2011 WL 996705, at *5; Jacobson, 402 B.R. at 367; Woodbury, 383 B.R. at 379.

Stated in slightly different terms, a servicer may have standing and be a party in interest if it files

the motion for relief from the automatic stay in its capacity as the holder's attorney-in-fact.  See

Hwang I, 396 B.R. at 767.[25]

_____

[24]     This distinction between authority to collect payments and the authority to initiate legal
action on behalf of the mortgage holder illustrates why the decisions authorizing servicers to file proofs
of claim for mortgage holders are both distinguishable from automatic stay cases and correctly decided
on their own terms.  Not only is the filing of the proof of claim by an agent expressly authorized by a rule
of court, see n. 22, supra, but also, by filing a proof of claim, the servicer is requesting a monetary
distribution from the bankruptcy estate, i.e., the servicer is attempting to collect payments due under the
mortgage.  That is exactly the same service it provides to the mortgage holder even under a more
circumscribed servicing agreement.

[25]     In Hwang I, the court recognized that a mortgage holder and servicer could enter into a
"proper agency relationship" that permits the servicer to function as the mortgage holder's "attorney-in-
fact" for purposes of enforcing the mortgage. 396 B.R. at 767.  The court suggested that such a
relationship would provide the servicer with standing and "party in interest" status.  The court then
concluded, however, that such a servicer still cannot satisfy the "real party in interest" requirements of
Fed. R. Bankr. P. 7017.  The court held, therefore, that the servicer may not prosecute a motion for relief
from the automatic stay as agent for the mortgage holder unless the holder "either joins or ratifies the
motion." Id. at 772.

Respectfully, I disagree with the Hwang court's conclusion that Rule 7017 mandates
dismissal of a motion in which the mortgage servicer demonstrates that it has full authority to act on
behalf of the mortgage holder in enforcement of the mortgage.  Typically, as occurred in this case,
motions for relief from the automatic stay are filed in the name of the servicer "as servicer" for the
mortgage holder.  If one assumes, as the Hwang court did, that the servicer is acting within the scope of
its authority in filing the motion, the servicer could simply style the motion as being filed by the holder,
"through its agent," instead of saying that the motion is filed by the servicer, "as servicer" for the

(continued...)

Reduced to its essence, to establish its status as a party in interest entitled to seek relief from the automatic stay under 11 U.S.C. §362(d) in order to enforce legal remedies for a default under a mortgage, a mortgage servicer must demonstrate that:

> (1) the initiation of the stay relief motion in the bankruptcy court is within the scope of authority delegated to the servicer by its principal and

> (2) the principal itself is a party in interest (i.e., its principal is a party with the right to enforce the mortgage).

In this case, assuming arguendo that the record supports a finding that Everbank is the mortgage holder with the authority to enforce the Mortgage in foreclosure proceedings, but see n. 21, supra, there is a paucity of evidence regarding the scope of Everhome's authority as servicer. The parties' servicing agreement was not introduced into evidence; nor were its particulars described by Everhome's trial witness.  In his testimony, Mr. Ricketson described Everhome as having the authority to collect payments, track payments and determine when an account is in default.  There was no evidence that Everbank has appointed Everhome as its agent for the purpose of initiating legal proceedings to enforce the Mortgage.

This is a fatal gap in the evidence.  I am unwilling to assume that the mere label of "servicer" is sufficient to cloak Everhome with authority to file a legal action on Everbank's behalf.

Given the Debtor's denial of Everhome's asserted party in interest status in his written response to the Motion, some evidence of Everhome's authority was necessary and that evidence

---

[25](...continued)
mortgage holder.  Either way, the real party in interest and the identity of the real party in interest has been disclosed, thereby effectuating the purpose of Fed. R. Civ. P. 17.  In my view, the dismissal of such a motion, as suggested in Hwang, exalts form over substance and is unnecessary.

was not offered.  As the <u>Wilhelm</u> court stated

> At the pleading stage, plaintiffs in federal court may rely on the allegations of their complaint to establish standing.  Similarly, stay relief movants may initially rely upon their motion. But if a trustee or debtor objects to a stay relief motion based upon lack of standing, the movant must come forward with evidence. Additionally, if the stay relief motion itself reveals a lack of standing, movants cannot rest on the pleadings.

407 B.R. at 400 (citation omitted); <u>see also</u> <u>Jacobson</u>, 402 B.R. at 370 ("At a minimum, there

must be an unambiguous representation or declaration setting forth the servicer's authority from

the present holder . . .  to collect on the note and enforce [the mortgage]").

Accordingly, the Motion must be denied.[26]


# IV.  CONCLUSION

This is a case in which the Debtor was substantially in arrears on his home mortgage

when he commenced this bankruptcy case, has not paid his monthly mortgage payment over a

number of months since filing the case and proposed a chapter 13 plan that contemplates the sale

of his residence and that, on its face, is of questionable feasibility due to the apparent lack of

equity in the Property.  Without prejudging the merits of the motion for relief from the automatic

stay, there is no question that the mortgagee has a good faith basis for pressing a motion for relief

---

[26]      During the hearing, the Debtor also argued that the Motion should be denied because Everhome failed to prove that it is the holder of the Note or a non-holder in possession of the Note with the authority to enforce the Note.  <u>See generally</u> <u>Kemp</u>, 440 B.R. at 629-32.  There is some legal authority for the proposition that in Pennsylvania "production of an accompanying bond or note  . . .  is not essential to a mortgagee's right of action on a mortgage."  <u>In re Dolata</u>, 306 B.R. 97, 130 (Bankr. W.D. Pa. 2004); <u>see</u> <u>Anderson v. Kern</u>, 102 A. 427 (Pa. 1917).  Rather, "the production of an unsatisfied mortgage creates a presumption that the bond has not been paid."  22 SPP 2d §121:75; <u>see</u> <u>Brownell v. Oviatt</u>, 64 A. 670 (Pa. 1906).  Because I decide the Motion on other grounds, I express no opinion on this issue.

from the automatic stay.

At the same time, however, it is understandable why the Debtor responded to the Motion by demanding proof that Everhome was the proper party to come before the court.  From his perspective, Everhome's role in the mortgage relationship is, at best, opaque.  Prior to the bankruptcy filing it was MERS (purporting, at least initially, to act in its own right), not Everhome or Everbank, that filed the foreclosure action against Debtor in state court.  And, as the evidence revealed, Everhome holds itself out as merely the mortgage servicer and not the mortgage holder.  There is no doubt that the Debtor acted in good faith in disputing Everhome's status as a party in interest.  In fact, the Debtor's position was meritorious.  At trial, Everhome failed to come forward with sufficient evidence to establish its party in interest status, resulting in the denial of the relief Everhome  requested from this court.

To the extent that the outcome in this matter may appear anomalous due to the apparent merits of the request for stay relief and the seemingly technical nature of the issue regarding the identity of the proper moving party, the fault lies with the moving party.  When a party claiming to be a secured creditor seeks relief from the automatic stay, the Debtor and the bankruptcy court are entitled to insist that the moving party show that it is the holder of the secured claim or that it is the authorized agent of the holder.  This imposes an evidentiary burden "that is not difficult to meet," requiring only "present[ation of] the rudimentary elements of its claim."  In re Salazar, 2011 WL 1398478, at *2, 3 (Bankr. S.D. Cal. Apr. 12, 2011).  Indeed, in this case, the evidentiary shortfall does not appear to have been insurmountable.

In the age of mortgage securitization, meeting the evidentiary burden imposed by the "party in interest" requirement of 11 U.S.C. §362(d) may be a somewhat more cumbersome task

for certain stay relief movants than it was for residential mortgagee--movants in the past, but that does not justify diluting the fundamental constitutional and statutory requirement that a party be a "party in interest" before it may obtain redress from a federal bankruptcy court.  Any added burden is a product of the business model chosen by the mortgage finance industry and therefore, is simply part of the mortgage loan industry's cost of doing business.  Presumably, the cost is offset by the benefits of the mortgage securitization system.

Furthermore, while a moving creditor may believe that its status as a party in interest is self-evident, the court cannot rule based on factual assumptions or evidentiary leaps.  Our legal system is governed by the core principle that court decisions are based on the evidence presented to the court.  That principle cannot be compromised because a particular industry has chosen a business model that complicates its legal affairs and makes it inconvenient to come forward with the evidence needed to establish its status as a proper party.  In the final analysis, the Motion must be denied to protect the integrity of the legal process.

For these reasons, I will deny the Motion without prejudice.

Date:   May 27, 2011

_____
ERIC L. FRANK
U.S. BANKRUPTCY JUDGE